FILED

February 10, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:19 PM



# COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: SARAH BREES**       **DOCKET NO. 2014-06-0072**

**STATE FILE NO. 74650-2014**

**EMPLOYER: ESCAPE DAY SPA &**   **DATE OF INJURY: SEPTEMBER 10, 2014**
**SALON**

**INSURANCE CARRIER: THE TRAVELERS**

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Sarah Brees, the Employee, pursuant to Tennessee Code Annotated section 50-6-239(d), on January 12, 2015. Ms. Brees requested an evidentiary hearing pursuant to Rule 0800-02-21-.14(1)(b) of the Tennessee Comprehensive Rules and Regulations. The undersigned convened a hearing of this matter via telephone on January 26, 2015. Ms. Bree's proceeded *pro se* and Employer, Escape Day Spa and Salon (Escape), was represented by attorney Vanessa Hall. Upon review of Employee's request, the evidence submitted, the testimony at the hearing and the parties' arguments, and in consideration of the applicable law, the Court enters the following order for medical benefits.

### Issues

Employee has presented the following issues for adjudication in her request for expedited hearing:

1. Whether Escape should be required to provide Ms. Brees additional medical treatment.

2. Whether Escape should be required to reimburse Ms. Brees the cost of medical bills which she paid out-of-pocket.

3. Whether Escape should be required to provide Ms. Brees past and ongoing temporary total or temporary partial disability benefits.

**Evidence Submitted**

The Court entered the following exhibits into evidence upon the parties' stipulation of their admissibility:

1. Medical records of Tennessee Orthopedic Alliance
2. Medical records of Hillsboro Imaging
3. Medical records of Care Spot
4. Medical records of Dr. Paul Abbey
5. Receipts from co-pays made by Ms. Brees
6. Wage statement
7. Choice of physician form completed by Ms. Brees
8. Notice of claim denial dated October 20, 2014

**History of Claim**

Ms. Brees worked as a massage therapist for Escape. Her work activities included providing massages of varying intensity to patrons. The work required significant use of her hands and wrists. Ms. Brees testified that she had worked as a massage therapist for thirteen years and that she worked six days per week. Ms. Brees claimed that she performed a lot of deep tissue massages.

On September 12, 2014, Ms. Brees experienced significant pain in her right wrist and hand. She went to Care Spot, a walk-in clinic, who advised her that she likely had an overuse injury. Care Spot instructed Ms. Brees to rest her "**left** wrist" and apply ice to it in fifteen-minute intervals several times each day.[1] (Exh. 3) (emphasis added).

On September 15, 2014, Ms. Brees notified her supervisor of the injury and requested that it be reported to workers' compensation. Escape provided Ms. Brees a panel of physicians and she selected Dr. Jane Siegel of Tennessee Orthopedic Alliance as the authorized treating physician (ATP). (Exh. 7).

Dr. Siegel ordered an MRI of Ms. Brees's right wrist and hand. (Exh. 1). The MRI results were essentially normal. (Exh. 2). Dr. Siegel diagnosed Ms. Brees with inflammation of the right wrist and restricted her from using her right hand at work. (Exh. 1). She placed a splint on the right hand and wrist and recommended rest and physical therapy. *Id*. Concerning the cause of Ms. Brees's pain, Dr. Siegel wrote the following response on a letter from Travelers: "Impossible to say there is 'no injury'—Pt[.] has pain in wrist of unknown etiology—all inflammation cause is multifactorial—without a specific injury I cannot pinpoint the cause." (Exh. 1, Traveler's Letter dated October 16, 2014). One section of the letter asked Dr. Siegel to provide her opinion "within a reasonable degree of medical certainty" of whether Ms. Brees's "diagnosis and need for treatment arose primarily out of and in the course and scope of her employment with [Escape.]" *Id*. Dr. Siegel did not complete this section of the letter. *Id*.

---

[1] The undersigned assumes that the naming of the left wrist is an error on the part of the medical provider as the parties never disputed Ms. Brees injured her right wrist.

On October 20, 2014, Travelers issued a notice of denial that terminated Ms. Brees's medical benefits. (Exh. 8). Travelers stated the following reasons for denying the claim: "No medical evidence of injury; not major contributing cause; no injury per statutory definition; right to reserve[.]" *Id.*

After Travelers terminated Ms. Brees's medical benefits, she continued to receive care from Dr. Siegel and utilized her private insurance to cover the costs. (Exh. 2, 5). On November 13, 2014, Dr. Siegel completed a form that bears the heading "Sarah Brees DCN.pdf." (Exh. 2). In that form, Dr. Siegel completed the section entitled "Primary diagnosis for disability and ICD code" by writing: "wrist tenosynovitis[,] wrist pain 727.05, 719.43." *Id.* Dr. Siegel also indicated that Ms. Brees's disability began on September 12, 2014, and that she had not been cleared to return to work. *Id.* Ms. Brees's medical records do not indicate that received further treatment from Dr. Siegel. (Exh. 2).

After Ms. Brees's last visit with Dr. Siegel, she rested her wrist for several weeks but did not notice any improvement. So on December 13, 2014, Ms. Brees sought a second opinion from Dr. Paul Abbey. (Exh. 4). She utilized her private medical insurance to cover the costs. (Exh. 4, 5).

At the first appointment, Ms. Brees told Dr. Abbey that she had been experiencing wrist pain for the last several months but did not disclose a specific injury. (Exh. 4). Ms. Brees told Dr. Abbey that she worked as a massage therapist. *Id.* Although Ms. Brees testified that she provided the MRI report to Dr. Abbey, the medical records indicated that Dr. Abbey did not review it.

Like Dr. Siegel, Dr. Abbey also diagnosed Ms. Brees with tenosynovitis. *Id.* He injected her arm with steroids and told her to follow up in two-to-three weeks if her symptoms did not improve. *Id.* In his medical notes, Dr. Abbey wrote the following concerning causation: "Her tendonitis is more likely caused by her present employment." *Id.* Dr. Abbey did not restrict Ms. Brees's activities. *Id.*

Ms. Brees returned to Dr. Abbey on January 21, 2015. At that appointment, Dr. Abbey prescribed oral steroids as well as a steroid compound cream. *Id.* Dr. Abbey also confirmed the diagnosis of tenosynovitis. *Id.*

At the hearing, Ms. Brees testified that Dr. Abbey took her off work at the January 21, 2015 visit. The office notes from that visit, however, do not mention her work. In his notes, Dr. Abbey wrote only that Ms. Brees should reduce her "activities" for two weeks and could then "resume her activities" if her symptoms improved. *Id.*

Ms. Brees presented receipts showing that she paid $25.00 in copays to Dr. Siegel and to Dr. Abbey. She also presented a medical bill showing that she owed $502.41 to Dr. Siegel's as of December 1, 2014. (Exh. 5).

At the time of the injury, Ms. Brees earned $950.76 per week which results in a compensation rate of $633.87. (Exh. 6).

3

## Employee's Contentions

Employee alleges that she suffered a compensable workplace injury and is entitled to temporary disability and medical benefits. She argues that the opinion of Dr. Paul Abbey proves that her wrist pain and need for treatment is related to her work. She further argues that Dr. Siegel and Dr. Abbey each restricted her from work and that she is, therefore, entitled to temporary disability benefits.

## Employer's Contentions

Escape argues that Ms. Brees has not suffered a compensable injury. Her request for temporary disability and medical benefits should be denied. In support of this position, Escape relies upon the statement of Dr. Jane Siegel.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Employee must show that the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13)(2014).

### *Factual Findings*

The Court finds that Ms. Brees has tenosynovitis, and that the injury arose primarily out of and in the course and scope of her employment with Escape. The Court finds that Dr. Abbey opined within a reasonable degree of medical certainty that Ms. Brees's work as a massage therapist caused her tenosynovitis. The Court finds that Dr. Siegel did not provide an opinion regarding the causal relationship between Ms. Brees's symptoms and her work activities. The Court finds that the medical treatment provided by Drs. Siegel and Abbey was reasonable and necessary for the treatment of Ms. Brees's work-related condition. The Court finds that Dr. Siegel took Ms. Brees completely off work for the period from September 12 through November 12, 2014. The Court finds that Dr. Abbey did not take Ms. Brees off from work for any period of time.

### *Application of Law to Facts*

Ms. Brees alleges that she suffered a cumulative trauma injury through the overuse of her right hand and wrist in the course and scope of her employment with Escape. In order to

4

recover, Ms. Brees must prove by a preponderance of the evidence that she suffered a compensable injury as defined by Tennessee Workers' Compensation Law.

"Injury," as defined by Tennessee Workers' Compensation Law, includes "cumulative trauma" and "repetitive motions conditions" if it can be shown "to a reasonable degree of medical certainty that" the conditions "arose primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(13)(2014). In order to be compensable as an injury by accident, the injury must be "caused by a specific incident or set of incidents, arising primarily out of an in the course and scope of employment and is identifiable by time and place of occurrence[.]" *Id*. at § 50-6-102(13)(A). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty-percent (50%) in causing the injury, considering all causes." *Id*. at § 50-6-102(13)(B). "'Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility.' *Id*. at § 50-6-102(13)(D).

Ms. Brees testified that she worked for the last thirteen years as a massage therapist. She worked up to six days each week and used her hands and wrists constantly. Ms. Brees further testified that she performed a lot of deep tissue massages. She stated that her right wrist and hand began hurting sometime after work on September 10, 2014, so she sought treatment on her own from the Take Care Clinic. Ms. Brees stated that she reported the injury to her supervisor on September 15, 2014, and requested that the injury be reported to Escape's workers' compensation carrier because the providers at Take Care Clinic told her that had an "overuse injury." Escape did not rebut Ms. Brees's chronology of events.

The Court finds Ms. Brees to be a credible witness and further finds that her testimony proves by a preponderance of the evidence that her employment primarily caused her symptoms. The volume and intensity of her work over a period of several years sufficient establishes a set of injury causing incidents necessary for a compensable claim.

The Court also finds that the medical evidence provides a causal relationship between Ms. Brees's work as a massage therapist and her hand pain. Dr. Seigel and Dr. Abbey both diagnosed tenosynovitis. (Exh. 2, 4). Concerning the cause of Ms. Brees's injury, Dr. Abbey opined that "Her tendonitis is more likely caused by her present employment." (Exh. 4) The Court interprets the meaning of this statement to be that Ms. Brees constant use of her hands through her work as a massage therapist more likely than not caused her injury. Under the definition of injury provided by Tennessee Workers' Compensation Law, Dr. Abbey's opinion satisfies the requirement that the medical evidence show "within a reasonable degree of medical certainty" that "a specific incident or set of incidents" caused the cumulative trauma condition of tenosynovitis. Accordingly, the Court finds that Dr. Abbey's opinion establishes a causal relationship between Ms. Brees's work and her injury.

The review of Dr. Abbey's opinion, however, does not determine the issue under prevailing law because Dr. Abbey was not the authorized treating physician. According to Tennessee Code Annotated section 50-6-102(13)(E), the authorized treating physician's opinion

on causation has a presumption of correctness that may be overcome through the presentation of countervailing proof that satisfies a preponderance of the evidence standard. *Id*. at § 50-6-102(13)(E). Dr. Siegel served as the authorized treating physician. (Exh. 7). She stated the following in response to Traveler's request for a causation opinion: 'Impossible to say there is "no injury"—Pt[.] has pain in wrist of unknown etiology—all inflammation cause is multifactorial—without a specific injury I cannot pinpoint the cause.' (Exh. 1, Traveler's Letter dated October 16, 2014). The Court finds t this is not a causation opinion because Dr. Siegel did not state whether or not the injury was work-related but, instead, stated there were many possible causes for Ms. Brees's pain. Furthermore, the fact that Dr. Siegel failed, or declined, to complete the section of the letter seeking a definitive causation opinion lends further support to the Court's finding that Dr. Siegel provided no causation opinion whatsoever. Because Dr. Siegel did not provide a causation opinion, the presumption of correctness does not apply.

The Court holds that Ms. Brees carried her burden of proving by a preponderance of the evidence that her tenosynovitis arose primarily out of and within the course and scope of her work as a massage therapist for Escape and is likely to prevail at a hearing on the merits. Ms. Brees established through her testimony that she used her hands and wrists to perform intense massages six days per week for a period of thirteen years. Dr. Abbey opined, within a reasonable degree of medical certainty, that the massage work caused her tenosynovitis and need for treatment.

Having established that Ms. Brees is likely to prevail at a hearing on the merits of the claim, the Court now turns to her request for temporary disability and medical benefits. Tennessee law requires an employer to provide "…free of charge to the employee such medical and surgical treatment…made reasonably necessary by accident as defined in this chapter[.]" *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014).

Ms. Brees received care from Dr. Abbey and Dr. Siegel. These physicians treated her symptoms of tenosynovitis. (Exh. 2, 4). Ms. Brees paid $50.00 in copays and owes Tennessee Orthopedic Alliance $502.41 for services rendered. (Exh. 5). Dr. Abbey's records also show that he treated Ms. Brees for tenosynovitis again on January 21, 2015. Ms. Brees, however, has not filed a receipt showing that she provided copay for that visit. The Court finds that both physicians provided reasonable and necessary treatment for Ms. Brees's work-related condition, and orders Escape to reimburse Ms. Brees for her out-of-pocket costs and to settle any outstanding bills with the providers. In addition, the Court orders Escape to provide payment for any reasonable and necessary future care provided by Dr. Abbey whom the Court hereby designates as the authorized treating physician for this claim.

Ms. Brees also requests temporary disability benefits. An employee is entitled to receive temporary total disability benefits pursuant to Tennessee Code Annotated § 50-6-207(1) whenever the employee has suffered a compensable, work-related injury that has rendered the employee unable to work. *See Simpson v. Satterfield,* 564 S.W.2d 953 (Tenn. 1978); Tenn. Code Ann § 50-6-207(1) (2013). Entitlement to temporary total disability benefits ends whenever an employee is able to return to work or reaches maximum medical improvement (MMI). *See id.*; *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000).

6

In this case, Dr. Siegel completed a form indicating that Ms. Brees could not work over the period from September 12 through November 12, 2014, but did not provide an opinion that related Ms. Brees's inability to work to her tenosynovitis. (Exh. 2). Dr. Abbey determined that Ms. Brees's tenosynovitis was work-related. (Exh. 4). Accordingly, Ms. Brees can recover temporary disability benefits for the period from September 12 through November 12, 2014, orm a period of eight weeks and five days, because Dr. Siegel took off from work and Dr. Abbey provided a valid causation opinion. Ms. Brees's compensation rate is $633.87 which entitles her to total compensation of $5,523.72.

While Ms. Brees testified that Dr. Abbey took her off from work for an additional period of time, the medical records contain no written statement declaring that she could not work. (Exh. 4). Without a note from a doctor taking Ms. Bres off from work, the Court holds that she cannot recover temporary disability benefits for time off from work after November 12, 2014. The Court can revisit this issue in the future upon motion and appropriate proof by either party.

**IT IS, THEREFORE, ORDERED** as follows:

1. Escape shall provide Ms. Brees with medical treatment for her injuries as required by Tennessee Code Annotated section 50-6-204, with Dr. Paul Abbey whom the Court designates at the authorized treating physician. Medical bills for said treatment shall be furnished to Escape or Travelers by Ms. Brees or Dr. Abbey.

2. Escape shall pay Ms. Brees's outstanding bills for treatment with Dr. Paul Abbey and Dr. Jane Siegel and reimburse Ms. Brees for any copays.

3. Escape shall pay Ms. Brees $5,523.72 in retroactive temporary total disability payments.

4. This is not a final order.

5. This matter is set for Initial Hearing via teleconference on Tuesday, April 21, 2014, at 10 a.m. (CDT). Instructions on how to participate in the teleconference are included below.

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ISSUE AND FILED WITH THE CLERK ON THIS THE 10th DAY OF FEBRUARY, 2015.**

_(signature)_

_____
**Joshua Davis Baker**
**Workers' Compensation Judge**

Initial Hearing:

An Initial Hearing has been set with Judge Joshua Davis, Court of Workers Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate in the Initial Hearing.  Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2.  File the completed form with the Court Clerk _within seven (7) business days_ of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3.  Serve a copy of the Request for Appeal upon the opposing party.

4.  The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3)

business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof.  If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 10th day of February, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| **Sarah Brees** | | | | | **x** | **sarahgbrees@gmail.com** |
| **Vanessa Hall** | | | | | **x** | **vhall@travelers.com** |

**Penny Patterson Shrum, Clerk**
**Tennessee Court of Workers'**
**Compensation Claims**